IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BBCMS MORTGAGE TRUST 2018-C2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C2,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MSM 970 RITTENHOUSE RD LLC,**<br><br>**Defendant.** | : : : : : : : : : : : : : : | **CIVIL ACTION**<br><br>**NO.     26-cv-5473** |

## COMPLAINT

Plaintiff, Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of BBCMS Mortgage Trust 2018-C2, Commercial Mortgage Pass-Through Certificates, Series 2018-C2 ("Lender"), acting by and through its special servicer, LNR Partners, LLC ("LNR"), for its complaint against Defendant, MSM 970 Rittenhouse Rd LLC ("Borrower"), avers as follows:

## I.     PARTIES, JURISDICTION AND VENUE

1.      Wilmington Trust, National Association, is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware, and an address for present purposes c/o LNR Partners, LLC, 2340 Collins Avenue, Suite 700, Miami Beach, Florida 33139.  Non-party LNR is the special servicer for Lender with respect to the Loan (as defined below).

2.      Borrower is a Pennsylvania limited liability company with an address of 377 Route 59, Suite 2, Airmont, New York 10952.  Upon information and belief, Borrower's

membership interests are owned directly or through an intervening limited liability company by Joel Epstein, Benjamin and Malka Neuman, Shaindy Brauner, Gittel Ekstein, Moses Samet and Bashie Stark, all of whom are citizens of New York, and none of Borrower's members is a citizen of Delaware.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

4.     Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is situated in this district.

## II.     FACTS

### A.     The Property

5.     Borrower is the fee owner of the real property located at 970 Rittenhouse Road in Audubon, Montgomery County, Pennsylvania, as more fully described in Exhibit A to the Mortgage (defined below), together with the Improvements, Personal Property, and other property as enumerated and defined in the Mortgage (collectively, the "Property").

### B.     The Original Loan Transaction

6.     On or about October 12, 2018, Barclays Bank PLC ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $5,925,000.00 (the "Loan").

7.     The Loan is evidenced by a Promissory Note dated October 12, 2018, executed by Borrower in favor of Original Lender in the principal amount of $5,925,000.00 (the "Note"), a copy of which is attached hereto as *Exhibit A*.

8.     To secure repayment on the Note, Borrower executed in favor of Original Lender an Open End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture

Filing dated as of September 21, 2018, but effective as of October 12, 2018 (the "Mortgage"), a copy of which is attached hereto as **Exhibit B**, with respect to Borrower's interest in the Property.

9. The Mortgage was recorded with the Recorder of Deeds of Montgomery County (the "Recorder") on October 17, 2018, as Instrument No. 2018071840 in Mortgage Book 14597, pages 1482-1508.

10. The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of October 12, 2018 (the "Loan Agreement"), a copy of which is attached hereto as **Exhibit C**. The Note, the Mortgage, the Loan Agreement and various other documents executed by Borrower with respect to the Loan are collectively referred to herein as the "Loan Documents."

C. **The Securitization and Assignment of the Loan to Lender**

11. Section 9.1(a) of the Loan Agreement provides in part that Lender may, *inter alia*, "securitize the Loan . . . in a single asset securitization or pooled asset securitization." *See* Ex. C (Loan Agreement) § 9.1(a)(iii).

12. The Loan was securitized in a pooled asset securitization and assigned by Original Lender to Lender effective as of December 20, 2018.

13. In connection with the assignment of the Loan, Original Lender delivered the original Note to Lender with an affixed Allonge dated as of December 20, 2018, a copy of which is attached hereto as **Exhibit D**.

14. Also in connection with the assignment of the Loan, Original Lender executed in favor of Lender an Assignment of Open End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 14, 2018, but effective as of December 20, 2018, a copy of which is attached hereto as **Exhibit E**, which was recorded with the

Recorder on January 29, 2029, as Instrument No. 2019006200 in Mortgage Book 14639, pages 2866-2870.

15.     Additionally, Original Lender executed in favor of Lender a General Assignment dated December 20, 2018, a copy of which is attached hereto as **Exhibit F**, by which Original Lender, as Assignor, assigned to Lender "all right, title and interest of Assignor in and to the Loan . . . and all other agreements, including but not limited to guaranty agreements, and certificates and documents entered into or delivered in connection with the Loan."

**D.      Relevant Contractual Provisions**

16.     The Mortgage secures, *inter alia*, the payment of the Debt (as defined in the Loan Agreement) and the performance of all of Borrower's obligations under the Loan Agreement and the other Loan Documents.  *See* Ex. B (Mortgage) at p. 1.

17.     The Mortgage grants to Lender a security interest in all of Borrower's current and future property, rights, interests and estates in and to the Property.  *See* Ex. B (Mortgage) § 1.01.

18.     The Loan Agreement requires that Borrower make a payment to Lender in the Monthly Debt Service Payment Amount of $31,977.09 on each Payment Date, which is defined as the sixth day of each calendar month through the maturity of the Loan.  *See* Ex. C (Loan Agreement) § 2.2.1(a) and at p. 13 (defining "Monthly Debt Service Payment Amount") and p. 15 (defining "Payment Date").

19.     The Loan Agreement provides that:

> If any principal, interest or any other sums due under the Loan Documents is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by Applicable Law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

*See* Ex. C (Loan Agreement) § 2.2.5.

20.    The Loan Agreement provides that it shall constitute an Event of Default if, *inter alia*, "any Monthly Debt Service Payment . . . is not paid when due under the Loan Documents."  *See* Ex. C (Loan Agreement) § 8.1(a)(i)(A).

21.    The Loan Agreement further provides that, upon the occurrence and during the continuance of an Event of Default, "interest on the outstanding principal balance of the Loan and, to the extent permitted by Applicable Law, overdue interest and other amounts due in respect of the Loan, shall accrue at the Default Rate," which is defined as "a rate per annum equal to the lesser of (a) the Maximum Legal Rate, or (b) five percent (5%) above the Applicable Interest Rate [of 5.047% per annum]."  *See* Ex. C (Loan Agreement) § 2.2.4 and at p. 2 (defining "Applicable Interest Rate") and p. 6 (defining "Default Rate").

22.    The Mortgage provides that, upon the occurrence and during the continuance of any Event of Default, Lender may, *inter alia*, "declare the entire unpaid Debt to be immediately due and payable" and "institute proceedings . . . for the complete foreclosure of this Security Instrument under any applicable provision of law."  *See* Ex. B (Mortgage) §§ 9.01(a)-(b).

23.    The Mortgage further provides that "Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property (including commencing any foreclosure action)."  *See* Ex. B (Mortgage) § 6.06; *see also* Ex. C (Loan Agreement) § 4.1.21 (Costs of Enforcement).

24.    Additionally, the Loan Agreement provides that Borrower shall pay or reimburse Lender for "all reasonable costs and expenses (including reasonable attorneys' fees

and disbursements) incurred by Lender in connection with," *inter alia*, "enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents or in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a 'work-out' or of any insolvency or bankruptcy proceedings." *See* Ex. C (Loan Agreement) § 10.13(a)(viii).

25.　The Loan Agreement also requires that Borrower pay a Yield Maintenance Default Premium (as defined) "[i]f, following an Event of Default, . . . all or any portion of the Debt is recovered by Lender after such Event of Default." *See* Ex. C (Loan Agreement) § 2.3.3 and p. 23 (defining "Yield Maintenance Premium").

**E.　Borrower's Default on Its Obligations**

26.　Beginning with the Payment Date for February 2026, Borrower failed to pay the Monthly Debt Service Payment Amounts due to Lender under the Loan Documents.

27.　Borrower's failure to pay the Monthly Debt Service Payment Amounts constitutes an Event of Default under the Loan Documents.　*See* Ex. C (Loan Agreement) § 8.1(a)(i)(A).

28.　Lender, through LNR, provided a Notice of Default to Borrower by letter dated March 6, 2026, a copy of which is attached hereto as ***Exhibit G***, which advised Borrower in relevant part that "Borrower is in default under the Note and other Loan Documents by virtue of, among other things, its failure to pay all amounts when due thereunder."　*See* Ex. G (Notice of Default) at p. 1.

29.　Notwithstanding the Notice of Default, Borrower failed to cure the Event of Default by paying the amounts due to Lender.

30.　Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated May 12, 2026, a copy of which is attached hereto as ***Exhibit H***, which advised

Borrower that "the Debt secured by the Mortgage is hereby accelerated and declared to be immediately due and payable" and that "demand is hereby made of Borrower for the immediate and full payment of the Debt." *See* Ex. H (Notice of Acceleration) at p. 2.

31.    To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

32.    Accordingly, Lender brings this action to foreclose the Mortgage.

**F.    Lender's Damages**

33.    As of June 5, 2026, there was due and owing on the Loan without defense, deduction, offset, recoupment, or counterclaim the total amount of $5,157,172.49, itemized as follows:

| | |
|---|---|
| Principal Balance | $5,210,589.09 |
| Note Rate Interest (3/11/26 – 6/11/26) | 67,205.59 |
| Default Interest (2/6/26 – 6/5/26) | 86,398.60 |
| Late Fees | 9,213.23 |
| Prepayment Premium | 117,155.00 |
| Advances by Master Servicer | 2,545.40 |
| Interest on Advances | 1,445.91 |
| Liquidation Fee | 55,095.78 |
| LNR Admin Fee | 125.00 |
| MS Payoff Processing Fee | 400.00 |
| Special Servicing Fee (2/20/26 – 6/5/26) | 14,000.00 |
| UCC Fee | 500.00 |
| *Less Credit – Escrow Funds* | (63.304.04) |
| *Less Credit – Reserve Funds* | (251,574.54) |

| | |
|---|---|
| *Less Credit – Lockbox Funds* | (92,622.53) |
| TOTAL AMOUNT DUE a/o 6/5/26 | $5,157,172.49 |

34.     Additional interest at the Note Rate and the Default Rate in the combined amount of $1,454.19 per diem as well as attorney's fees, special servicing fees and other fees, charges and costs recoverable under the Loan Documents have continued and continue to accrue on the Loan since June 5, 2026.

### COUNT ONE – MORTGAGE FORECLOSURE

35.     Paragraphs 1 through 34 of this Complaint are incorporated herein by reference.

36.     Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

37.     Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

38.     Lender is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

39.     There is currently due and owing on the Loan the sum of $5,157,172.49, together with interest and default interest, fees, charges and costs accrued and accruing since June 5, 2026, as recoverable under the Loan Documents.

WHEREFORE, Lender respectfully requests that judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $5,157,172.49, together with additional interest and default interest, fees, charges and costs accrued and accruing since June 5, 2026, as recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

## COUNT TWO – SALE OF PERSONAL PROPERTY

40. Paragraphs 1 through 39 of this Complaint are incorporated herein by reference.

41. Borrower granted to Original Lender in the Mortgage a security interest in, *inter alia*, the Personal Property defined in Section 1.01(e) of the Mortgage and described in Schedule A to the UCC-1 Financing Statement described below, which are incorporated herein by reference.

42. Original Lender perfected its lien and security interest in the Personal Property by filing a UCC-1 Financing Statement with the Pennsylvania Secretary of State (the "Secretary") on October 24, 2018, as Filing No. 2018102500163, a copy of which is attached hereto as ***Exhibit I*** and incorporated herein by reference for purposes of Rule 1147(b)(2) of the Pennsylvania Rules of Civil Procedure.

43. Original Lender assigned its lien and security interest in the Personal Property to Lender via a UCC-3 Amendment-Assignment, which was filed with the Secretary on February 1, 2019, as Filing No. 2019020400738. A copy of the referenced UCC-3 Amendment-Assignment is attached hereto as ***Exhibit J***.

44. Lender subsequently continued its lien and security interest in the Personal Property via a UCC-3 Amendment-Continuation, which was filed with the Secretary on May 5, 2023, as Amendment No. 20230505091352. A copy of the referenced UCC-3 Amendment-Continuation is attached hereto as ***Exhibit K***.

45. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the Other Loan Documents.

46. Lender is authorized by the Mortgage and by Pennsylvania law to foreclose its security interest in the Personal Property in the event of a default by Borrower.

9

47.    Pursuant to Pennsylvania Rule 1147(b), Lender hereby elects to have the Personal Property sold at public sale together with the real property under the Mortgage.

WHEREFORE, Lender respectfully requests that the Court order the Personal Property to be sold together with the real property under the Mortgage according to law to satisfy the amounts due to Lender and for such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  August 3, 2026

/s/ Raymond A. Quaglia
Raymond A. Quaglia, Esq.
Brian Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

Counsel for Plaintiff